UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JOSEPH ANGIUONI,                    )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )       Civil Action No. 11-11661-NMG
                                    )
TOWN OF BILLERICA, et al.,          )
                                    )
        Defendants.                 )
_____ )

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT**
[Docket No. 12]

July 16, 2012

Boal, M.J.

Plaintiff Joseph Angiuoni ("Angiuoni") alleges that the Defendants Town of Billerica and Police Chief Daniel Rosa terminated his employment as a police officer due to his prior military service in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301, et seq. ("USERRA"). He also alleges that, since his termination, defendant Daniel Rosa has sabotaged his efforts to obtain a police officer position in another municipality. Defendants have moved to dismiss the First Amended Complaint. For the following reasons, this Court recommends that the District Judge assigned to this case DENY Defendants' motion to dismiss.

I.      PROCEDURAL BACKGROUND

On September 20, 2011, Angiuoni filed his Complaint against the defendant Town of Billerica (the "Town"). (Docket No. 1). The Town filed a motion to dismiss the Complaint on

-1-

November 23, 2011.  (Docket No. 7).

On November 29, 2011, Angiuoni filed a First Amended Complaint.  (Docket No. 10).  The First Amended Complaint added Chief of Police Daniel Rosa ("Rosa") as a defendant.

The Defendants moved to dismiss the First Amended Complaint on December 16, 2012.  (Docket No. 12).  Angiuoni filed his opposition to the motion to dismiss on December 30, 2012.  (Docket No. 14).  The District Court referred the motion to this Court for a report and recommendation on January 3, 2012.  The Court heard oral argument on July 10, 2012.

## II.     FACTUAL BACKGROUND[1]

Angiuoni served in the United States Army from 2002 until 2007.  First Amended Complaint ("Complaint"), ¶ 10.  He was honorably discharged with a back injury in 2007.  Id.

In April 2009, after he graduated from the Massachusetts Police Academy, Angiuoni began working as a probationary patrol officer for the Town's Police Department (the "Department").  Complaint, ¶ 12.  After a year of service, Angiuoni would have become a tenured police officer.  Complaint, ¶ 6.

A tenured police officer who is a disabled veteran receives preference in the event of layoffs over all other non-veteran officers, regardless of seniority.  Complaint, ¶ 9.

Per customary practice, the Department assigned a Field Training Officer ("FTO") to supervise and coordinate Angiuoni's training during his probationary period.  Complaint, ¶ 13.  Officer Bobby Moran was assigned to Angiuoni as his FTO.  Id.  Officer Moran never received

---

[1] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the First Amended Complaint and drawing all reasonable inferences in the Plaintiff's favor.  See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

certification as an FTO and should not have been assigned to serve as Angiuoni's FTO. Complaint, ¶ 14. Angiuoni did not receive adequate training by his FTO or the other officers and superiors who took part in his training. Complaint, ¶¶ 15, 17.

Angiuoni alleges that the Department and his superiors never intended to train him adequately because they did not want Angiuoni to become a tenured police officer. Complaint, ¶ 18. He also alleges that he was terminated due to his status as a veteran. See Complaint, ¶ 22. The Complaint suggests that Angiuoni was terminated before he became a tenured police officer so that he would not achieve preference over other police officers in the event of layoffs, which were expected to happen in the near future. See generally Complaint, ¶¶ 9, 19-20, 22, 30-37. Angiuoni alleges that the officers and superiors in the Department, including Rosa, have expressed antagonism against veterans in the Department. He cites the following incidents and comments as evidence of such antagonism:

1. After Angiuoni began training, his FTO complained that veterans should not receive any preference at layoffs. Complaint, ¶ 22(a).

2. Lieutenant Ronald Conrad Balboni told Plaintiff that because the Department could not lay him off due to his veteran status, they would have to fire him to get rid of him. Complaint, ¶ 22(b).

3. Lieutenant Balboni has expressed anger at the veteran status of other police officers, including statements that veterans made a choice to go to the armed forces, while he made a choice to go to school, and veterans should not receive an advantage because of their choice. Complaint, ¶ 22(c).

4. After Angiuoni's termination, his FTO told a new probationary officer, Frank

          Rayne, who was also a veteran, not to train with him because it would result in

          Rayne's termination because of his status as a veteran. Complaint, ¶ 22(d).

4.     Sergeant Patrick McNulty told other officers in the Department that certain

          superiors did not like Angiuoni because he was a veteran. He also stated that the

          Department in general, and several specific members, did not like veterans.

          Complaint, ¶ 22(e).

5.     Aware of the animus against Angiuoni's veteran status, the union president asked

          Rosa to place Angiuoni with other training officers who had volunteered to train

          Angiuoni and who, the union president knew did not have a bias against veterans,

          but Rosa refused. Complaint, ¶ 23.

6.     When another officer told Rosa that Angiuoni was doing a good job, Rosa

          responded that he "didn't want to hear anything good about that kid." Complaint,

          ¶ 26.

In November 2009, after Angiuoni had served eight months as a probationary police officer, Rosa asked Angiuoni to meet with him in his office. Complaint, ¶ 28. The union president heard about this meeting and suspected that Rosa might be notifying Angiuoni of his termination. Complaint, ¶ 29. With the intention of attending the meeting and supporting Angiuoni, he located Rosa and Angiuoni just as they approached Rosa's office but Rosa did not allow him into the meeting. Complaint, ¶¶ 29-30. Rosa then said to Angiuoni: "He can't help you now." Complaint, ¶ 30.

During the meeting, Rosa asked Angiuoni to resign. Complaint, ¶ 31. He also told Angiuoni that if he did not resign, he would make sure that Angiuoni did not work in any other

law enforcement job.  Complaint, ¶ 32.  Rosa took Angiuoni's badge and placed him on paid leave.  Complaint, ¶ 33.

On November 30, 2009, Angiuoni received a letter from the Town Manager notifying him that his employment with the Department was terminated.  Complaint, ¶ 34.  After his termination, Angiuoni requested a copy of his personnel file.  Complaint, ¶ 35.  He received a file containing seven pages of documents, none of which contained negative reviews of his performance.  Id.  However, in response to a government investigation, Rosa later produced a copy of Angiuoni's file containing a number of critical reviews of Angiuoni.  Complaint, ¶ 36.  The files were not dated and Angiuoni had never seen them before.  Id.

Rosa hired his 55-year old neighbor, a non-veteran, to replace Angiuoni.  Complaint, ¶ 37.

Since his termination, Angiuoni has applied to numerous public safety positions for which he was qualified, and for which he has been considered in a final round of interviews.  Complaint, ¶ 38.  In each situation, after the prospective employer told him that it would contact Angiuoni's former employers, Angiuoni did not get hired.  Id.  Angiuoni alleges that Rosa has given false and negative opinions of Angiuoni to prospective employers, in fulfillment of his earlier threat that if Angiuoni did not resign he would never work in law enforcement again.  Complaint, ¶ 39.

III. ANALYSIS

Defendants move to dismiss the First Amended Complaint on the basis that it fails to state a claim.  First, they argue that USERRA does not apply to Angiuoni because he was not in active duty at the time of his termination.  Def. Mem. at 5.  Even if USERRA applies to

Angiuoni, the Defendants argue that he has not stated a claim. Def. Mem. at 7-9. They also argue that because Angiuoni's USERRA claim fails, the Court should not exercise supplemental jurisdiction over Angiuoni's tortious interference claim. Def. Mem. at 9. Finally, they argue that Angiuoni has failed to state a tortious interference claim. For the following reasons, this Court disagrees.

### A. Standard Of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Consideration of other materials is generally forbidden unless the motion is properly converted into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

The Court must accept all factual allegations in the complaint as true and draw all

reasonable inferences in the plaintiff's favor.² Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. Iqbal, 556 U.S. at 679.

B.   USERRA

USERRA prohibits discrimination on the basis of military status. See 38 U.S.C. § 4301(a). USERRA applies to both reservists and non-reservists. Id. at § 4303(13); Mock v. City of Rome, __ F. Supp. 2d __, 2012 WL 1058255, at *3 (N.D.N.Y. 2012). It was enacted in 1994, in response to the Supreme Court's decision in Monroe v. Standard Oil Co., 452 U.S. 549 (1981), where the Supreme Court held that USERRA's predecessor, the Veterans' Reemployment Rights Act ("VRRA"), provided for discrimination claims on the basis of military status only where the employee could show that the discrimination was "motivated

---

² Defendants argue that the Complaint fails to meet the Iqbal pleading requirements because it relies on "hearsay references." Def. Mem. at 8. However, even under Iqbal, a plaintiff need not plead specific, admissible evidence in support of a claim. See, e.g., Campanella v. County of Monroe, __ F. Supp. 2d __, 2012 WL 537495, at *10 (W.N.D.Y. Feb. 17, 2012); Polar Molecular Corp. v. Amway Corp., No. 1:07-CV-460, 2007 WL 3473112, at *4 (W.D. Mich. Nov. 14, 2007).

*solely*" by such status. Velazquez-Garcia v. Horizon Lines of Puerto Rico, 473 F.3d 11, 16 (1st Cir. 2007) (emphasis in original) (quoting Monroe, 452 U.S. at 559). USERRA was meant to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." Mock, 2012 WL 1058255, at *3 (quoting Gummo v. Vill. of Depew, 75 F.3d 98, 105 (2nd Cir. 1996)).

USERRA lists three primary purposes for its enactment: (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service; (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services.[3]  38 U.S.C. § 4301(a).

USERRA's anti-discrimination provision is found in Section 4311, which provides, in relevant part:

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
>
> . . .
>
> (c) An employer shall be considered to have engaged in actions prohibited – (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services

---

[3] The third purpose is relevant to the Plaintiff's allegations of discrimination. The Defendants cite to the first and second purposes and omit the third.  See Def. Mem. at 5.

> is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service. . . .

38 U.S.C. § 4311. Accordingly, an employee making a discrimination claim under USERRA bears the initial burden of showing by a preponderance of the evidence that his military service was a "motivating or substantial factor" in the employer's action. Id. Discriminatory motivation under USERRA reasonably may be inferred from a variety of factors, including (1) proximity in time between the employee's military activity and the adverse employment action; (2) inconsistencies between the proffered reasons and other actions of the employer; (3) an employer's expressed hostility toward members protected by the statute together with knowledge of the employee's military activity; and (4) disparate treatment of certain employees compared to other employees with similar work records or offenses. Sheehan v. Dep't of the Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001). If the employee establishes that his military status was a motivating factor in the employer's decision, USERRA then shifts the burden of proof to the employer to show, by a preponderance of the evidence, that it would have taken the adverse employment action despite the employee's protected status. Velazquez-Garcia, 473 F.3d at 17.[4]

### 1.     *USERRA Covers Past Military Service*

Defendants argue that Angiuoni's USERRA claim fails because the discrimination provision in Section 4311 only "contemplates or covers ongoing or active duty, service obligations, or training situations." Def. Mem. at 5. This Court disagrees.

---

[4] This burden-shifting analysis is different from the burden shifting analysis employed in Title VII employment discrimination actions. Under Title VII, the employee always bears the burden of persuasion. By contrast, under USERRA, the employee does not have the burden of demonstrating that the employer's stated reason is a pretext. Instead, the employer bears the burden of showing that it would have taken the adverse action despite the employee's military service. See Velazquez-Garcia, 473 F.3d at 17.

Section 4311 expressly prohibits discrimination against any person who "has performed" service in an uniformed service. 38 U.S.C. § 4311(a). The statute that USERRA replaced, the VRRA, did have a more limited anti-discrimination clause, that prevented hiring discrimination only on the basis of a prospective employee's "obligation as a member of a Reserve component of the Armed Forces." McLain v. City of Somerville, 424 F. Supp. 2d 329, 334 (D. Mass. 2006) (quoting 38 U.S.C. § 2021(b)(3) (1991)). By enacting USERRA, Congress signaled that it intended to broaden employment protection for veterans. Id.; see also Lapine v. Town of Wellesley, 304 F.3d 90, 100 (1st Cir. 2002) ("USERRA was created to streamline the laws protecting veterans that had become increasingly complex and cumbersome over the years."). Indeed, the language of the statute makes clear that an employee need only show that military service was a "motivating factor" in order to prove liability. Velazquez-Garcia, 473 F.3d at 17. Accordingly, this Court finds that USERRA covers past military service so long as that service was a motivating factor in the employer's adverse employment decision. Indeed, if true, it would be illogical for USERRA not to protect against the discriminatory actions as alleged in the Complaint.

Defendants cite to Vega-Colon v. Wyeth Pharmaceuticals, 611 F. Supp. 2d 110, 114 (D.P.R. 2009), as support for their position that Section 4311 applies only to active or ongoing military service. Def. Mem. at 5. Defendants' reliance on Vega-Colon is misplaced. First, the First Circuit reversed the district court's decision in part. Vega-Colon v. Wyeth Pharmaceuticals, 625 F.3d 22, 26 (1st Cir. 2010). In addition, the Vega-Colon plaintiff alleged discrimination based on his decision "to return to active duty with the Army." He had not as yet

commenced such service.  Id. at 25.  Accordingly, that case does not support the Defendants' argument.

2. *Angiuoni Has Stated A USERRA Claim*

As stated above, in order to state a claim under USERRA, Angiuoni must allege sufficient facts to show that his past military service was a motivating or substantial factor in the Town's actions.  Velazquez-Garcia, 473 F.3d at 17.[5]  In order to do so, Angiuoni may rely on circumstantial evidence of discrimination.  Id.  Here, Angiuoni has alleged specific expressions of anti-military bias from superior officers and by others charged with training Angiuoni. Complaint, ¶ 22.  He alleges a general anti-military bias in the Department because veterans received preference at layoffs regardless of seniority.  See generally Complaint, ¶¶ 9, 22.  In addition, Angiuoni alleges that he was not properly trained because other officers did not want another tenured officer with veterans preference in the Department.  Complaint, ¶¶13-18. Angiuoni also alleges that Rosa knew about the bias and did nothing to remove other officers from their oversight and training of Angiuoni.  Complaint, ¶¶ 24-25.  Finally, he alleges that when he originally requested and received his personnel file after his termination, the file did not contain any negative reviews.  Complaint, ¶ 35.  However, later, in response to a government investigation, Rosa produced a copy of Angiuoni's personnel file that contained a number of

---

[5] Defendants raise Angiuoni's probationary status at the time of his discharge as an issue in their favor. Def. Mem. at 7.  While an individual's probationary status may give an employer more leeway in terms of firing an individual, such status, in and of itself, would not appear to insulate the employer from liability under USERRA. See 20 C.F.R. § 1002.41 ("USERRA rights are not diminished because an employee holds a temporary, part-time, probationary, or seasonal employment position.").

undated critical reviews of Angiuoni's performance, which Angiuoni had not seen before. Complaint, ¶ 36.

All of these allegations, if true, allow the Court to draw an inference that the Defendants' actions were substantially motivated by Angiuoni's past military service. Because it must liberally construe USERRA for the benefit of veterans, see Ortiz Molina v. Rimco, Inc., No. 05-1181, 2006 WL 2639297, at *8 (D.P.R. Sept. 13, 2006), and also construe the allegations as true at this stage, the Court finds that Angiuoni's claims survive the Defendants' motion to dismiss.[6]

### C. Tortious Interference

To state a claim for tortious interference with advantageous relations, Angiuoni must prove that "(1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 448 Mass. 255, 260 (2007) (citing Weber v. Community Teamwork, Inc., 434 Mass. 761, 781 (2001)).

Rosa argues that Angiuoni has failed to satisfy the first and second requirements. Def. Mem. at 9-10. This Court disagrees. First, Angiuoni alleges that he had prospective employment relationships with several potential employers. Complaint, ¶ 38. He does not

---

[6] The Defendants appear to suggest, in passing, that Rosa is not subject to suit under USERRA. Def. Mem. at 4. Citing to Townsend v. Univ. of Alaska, 543 F.3d 478 (9th Cir. 2008), they state that USERRA "does not create an express cause of action against individual state supervisors." Id. Because the Defendants failed to brief this argument fully (or seek dismissal of Chief Rosa on that basis), the Court need not address it here. In any event, Townsend addresses under what circumstances an employee may sue a state as an employer under USERRA and has little, if any, application here. Id. at 485-87.

allege simply that he has applied for jobs unsuccessfully, but he alleges that he has reached the final round of consideration and was not hired after the potential employer told him that they would contact his former employers. Id. Accordingly, at this stage in the case, where the Court must construe the allegations in Angiuoni's favor and the Defendants have not provided clear legal authority to the contrary, this Court finds that the Plaintiff has sufficiently pled the first prong to survive a motion to dismiss.

Angiuoni has also alleged that Rosa gave false and negative opinions of him to prospective employers. Complaint, ¶ 39. Rosa focuses on the fact that this allegation is made "on information and belief." Def. Mem. at 10. However, "a plaintiff can make allegations *either* on the basis of personal knowledge or on 'information and belief.'" Langadinos, 199 F.3d at 73 (emphasis in original). Angiuoni's attorney is entitled to include such "information and belief" allegations in the complaint so long as he had a good faith basis for doing so, particularly when the facts are the kind that are peculiarly within the possession and control of defendant Rosa or where the belief is based on factual information that makes the inference of culpability plausible. Id.; see also Arista Records LLC v. Doe 3, 604 F.3d 110, 120 (2nd Cir. 2010) (Twombly plausibility standard does not prevent a plaintiff from pleading facts "upon information and belief."). Here, Angiuoni alleges that Rosa told him that if he refused to resign from his position with the Town, Rosa "would make sure that Plaintiff did not work in any other law enforcement job." Complaint, ¶ 32. Therefore, it is plausible that Rosa gave false negative reviews to prospective employers when they called for a reference.

Finally, Rosa argues that Angiuoni's claim fails because "communications between former and prospective employers concerning an employee are . . . privileged." Def. Mem. at

10. Defendants are correct that an employer has a conditional privilege to provide information about a former employee when contacted for a job reference. See White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 69 (2004). However, the employer loses the privilege if the employer "(1) knew the information was false, (2) had no reason to believe it was true, or (3) recklessly published the information unnecessarily, unreasonably, or excessively." Vanguri v. FMR Corp., 78 Mass. App. Ct. 1130 at *2 (2011) (unpublished decision) (quoting Dragonas v. School Comm. of Melrose, 64 Mass. App. Ct. 429, 438 (2005)). Here, by alleging that Rosa told Angiuoni that he would make sure Angiuoni would never have a job in law enforcement again and that his statements to prospective employers were false, Angiuoni has pled enough facts to raise an issue of fact as to whether the privilege applies. Accordingly, in this case, the application of the privilege cannot be resolved on a motion to dismiss and the District Court should deny Rosa's motion to dismiss the tortious interference claim.[7]

D. Injunctive Relief

Defendants argue that because Angiuoni's claims fail, Angiuoni's count for injunctive relief must fail as well. Def. Mem. at 11. Because the Court finds that Angiuoni sufficiently

---

[7] Rosa argues that if the USERRA claim is dismissed, the District Court should decline to exercise supplemental jurisdiction over the tortious interference claim. Def. Mem. at 9. Should the District Court disagree with this Court's recommendation to deny the motion to dismiss with respect to the USERRA claim, then this Court recommends that the District Court decline to exercise its supplemental jurisdiction over the tortious interference claim. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Where federal claims are being dismissed at an early stage of the litigation, "the balance of competing factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims[.]" Id.

alleges his legal claims, Defendants' motion to dismiss the count for injunctive relief should also be denied.

IV. RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case DENY the Defendants' motion to dismiss.

V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge