**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| JOSEPH ANGIUONI, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Civil Action No. |
| v. | )   11-11661-NMG |
| | ) |
| TOWN OF BILLERICA AND DANIEL | ) |
| ROSA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM & ORDER

GORTON, J.

This case arose after plaintiff Joseph Angiuoni ("plaintiff" or "Angiuoni") was terminated from his position as a probationary officer with the Billerica Police Department. Plaintiff filed suit against the Town of Billerica ("the Town") and its Chief of Police, Daniel Rosa ("Rosa") (collectively, "defendants").  He alleges that defendants violated the federal Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311, by terminating him due to his status as a disabled military veteran and that Rosa subsequently interfered with his attempts to secure employment with other law enforcement agencies in violation of Massachusetts law.

The defendants' motion for summary judgment (Docket No. 52) was allowed, in part, and denied, in part, by a Court Order

-1-

dated January 24, 2014, "with memorandum and order to follow." The Court now publishes the subject memorandum and order.

I.  **Background**

Plaintiff served in the United States Army Reserve from 2003 to 2008 and was honorably discharged with a back injury. In April, 2009, he began working as a full-time probationary patrol officer for the Billerica Police Department ("the Department").  Due to his injury, he was classified as a disabled veteran under the Massachusetts Civil Service Statute. That status would have entitled him to preference over all other police officers in the Department in the event of layoffs, regardless of seniority, had he been hired by the Department following his probationary period. M.G.L. c. 31, §§ 26, 34, 61.

As a probationary officer, plaintiff underwent a field training program during which he was supervised by several "field training officers".  It appears from the facts that plaintiff was most frequently supervised by Officer Moran ("Moran"), although he was assigned to accompany Sergeant Elmore ("Elmore") later in his tenure with the Department.

The record indicates that plaintiff's training did not go well and that, on several occasions, he failed to follow proper police procedures.  In June 2009, Lieutenant Opland ("Opland"), who oversees the field training program, extended plaintiff's

training period beyond the usual eight weeks.  The extension was
based on input from Department members including Moran.

At about the time plaintiff was hired, Rosa notified
Department personnel that there would be at least a 23%
reduction in opportunities to work overtime and some members of
the Department, including Moran, began to worry that there would
be layoffs.  Moran allegedly told plaintiff that it was unfair
that plaintiff would potentially keep his job due to his
impending status as a disabled veteran police officer while
Moran might be laid off.

In November, 2009, Rosa obtained written evaluations of
plaintiff from Opland, Moran and Officer Magnan ("Magnan").
Moran's statement was generally negative.  Moran described
several instances in which plaintiff had displayed incompetence
or failed to follow proper procedures.   Opland's report
describes several of the same instances as Moran's report but
includes other mistakes made by plaintiff that were reported by
Department members other than Moran.  Magnan's report was
largely positive and noted that plaintiff had improved since
joining the force.  Plaintiff did not receive copies of any of
the written evaluations until after he was terminated.

Rosa also discussed plaintiff's progress with Elmore and
the Deputy Chief.  Elmore reported that plaintiff had seized a

legally-possessed "air soft gun" from an individual without following proper police procedures.

Rosa put plaintiff on administrative leave in early November, 2009. Union President Eidens was not invited to the meeting at which plaintiff was told that he would be placed on leave status and Rosa did not inform plaintiff that he had a right to be represented at that meeting. The Town held a formal hearing on the matter before terminating plaintiff, upon Rosa's recommendation, on November 30, 2009.

After plaintiff was terminated, he applied for a position with several police departments but was not hired. Plaintiff alleges that 1) he was a finalist for a position with the New Hampshire State Police, 2) he was told that the hiring entity would contact his past employers and 3) he was thereafter not offered the job.

Plaintiff filed a Complaint against the Town in September, 2011 and amended his Complaint shortly thereafter to add claims against Rosa. Count I of the Amended Complaint (Docket No. 10) alleges that both defendants violated the federal Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311, in that they terminated plaintiff because of his status as a veteran. Count II alleges that Rosa, in his individual capacity, tortiously interfered with plaintiff's prospective business relations by knowingly providing false or negative

opinions to other police departments in retaliation for plaintiff's refusal to resign from the Department.  Count III seeks preliminary and permanent injunctive relief.

Defendants moved to dismiss the Amended Complaint in December, 2011, and the Court denied that motion in September, 2012.  Defendants filed the instant dispositive motion in November, 2013.

## II.   Defendants' motion for summary judgment

### A.   Legal standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts
to the non-moving party to set forth specific facts showing that
there is a genuine, triable issue. Celotex Corp. v. Catrett, 477
U.S. 317, 324 (1986).  The Court must view the entire record in
the light most favorable to the non-moving party and make all
reasonable inferences in that party's favor. O'Connor v.
Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is
appropriate if, after viewing the record in the non-moving
party's favor, the Court determines that no genuine issue of
material fact exists and that the moving party is entitled to
judgment as a matter of law.

   **B.   Application**

      **1.   Count I: Violation of the Uniformed Services
            Employment and Reemployment Rights Act**

Plaintiff first alleges that defendants discriminated
against him on the basis of his military service in violation of
the Uniformed Services Employment and Reemployment Rights Act of
1994 ("USERRA"), 38 U.S.C. § 4311.  The USERRA provides that a
person who has performed uniformed military service "shall not
be denied...any benefit of employment" on the basis of
performing such a service. 38 U.S.C. § 4311(a).

To prevail on his claim, plaintiff must make an initial
showing that his or her service in the military was a
"motivating" or "substantial factor in the employer's action.

-6-

<u>Id.</u> § 4311(c)(1); <u>Velazquez-Garcia</u> v. <u>Horizon Lines of P.R.,</u>
<u>Inc.</u>, 473 F.3d 11, 17 (1st Cir. 2007).  The burden then shifts
to the employer to prove, by a preponderance of the evidence,
that it would have taken the action regardless of the employee's
military service. <u>Velazquez-Garcia</u>, 473 F.3d at 17.  The Court
of Appeals for the First Circuit has clarified that

> [t]he issue under USERRA is not whether an employer is
> "entitled" to dismiss an employee for a particular
> reason, but whether it would have done so if the
> employee were not in the military.

<u>Id.</u> at 20.

Plaintiff has carried his burden of making an initial
showing that his military service was a motivating factor in his
termination.  As an initial matter, The record shows that Moran,
who appears to have supervised plaintiff for much of plaintiff's
probationary period, told plaintiff that it was unfair that
plaintiff would receive a preference if there were layoffs due
to his status as a disabled veteran.

The fact that Rosa and the Town in general have not
expressed any anti-military bias does not defeat plaintiffs'
claim.  An employer that does not have anti-military bias may
nevertheless be found liable under USERRA

> if a supervisor performs an act motivated by anti-
> military animus that is intended by the supervisor to
> cause an adverse employment action, and if that act is
> a proximate cause of the ultimate employment action.

Staub v. Proctor Hosp., 131 S. Ct. 1186, 1194 (2011).  Here,
Moran provided a negative evaluation of plaintiff to Rosa at
some point before plaintiff was terminated and there is evidence
that Moran was motivated by anti-military animus due to his
resentment of the anticipated preference Angiuoni would receive
in the event of layoffs.  Moreover, a reasonable jury could
infer that Moran submitted the report in order to cause Rosa to
terminate plaintiff because there is no other evidence in the
record chronicling the events described by Moran in his report.
Finally, there is sufficient evidence that Moran's report was a
proximate cause of plaintiff's termination, even if it was not
the sole cause and even if Rosa exercised independent judgment
in deciding to recommend that plaintiff be terminated.  See id.
at 1192 (reasoning that the employer may be held liable even if
the decision-maker exercises individual discretion because an
injury may have multiple proximate causes).

Moreover, plaintiff's USERRA claim survives summary
judgment.  Defendants have not carried their burden of showing
that they would have terminated plaintiff regardless of his
status as a disabled veteran.  While there is evidence that
several officers besides Moran had reported their concerns about
plaintiff's suitability for police work, Moran provided one of
three written evaluations that Rosa relied upon in placing
plaintiff on administrative leave.  Moreover, Opland's negative

-8-

evaluation relied heavily on Moran's account, whereas the
evaluation provided by another officer was generally positive.
Based on this record, a reasonable jury could conclude that
defendants had failed to prove that they would have taken the
same action regardless of plaintiff's status. See Velazquez-
Garcia, 473 F.3d at 20 (explaining that the test is whether the
employer would have terminated the employee regardless of his
military status).

Furthermore, a jury would be entitled to infer from the
fact that the Department did not turn over to plaintiff the
negative written evaluations as it was required to do under
union rules that defendants only began to document problems with
plaintiff's performance after they decided to terminate him. Cf.
Billings v. Town of Grafton, 515 F.3d 39, 55-56 (1st Cir. 2008)
(explaining that a plaintiff may demonstrate pretext in the
Title VII context by pointing to inconsistencies and weaknesses
that render an employer's reasons less credible).

Finally, the Court declines to dismiss plaintiff's USERRA
claim against Rosa, who is sued in both his official and
individual capacities.  The USERRA definition of "employer"
includes "a person...to whom the employer has delegated the
performance of employment-related responsibilities." 38 U.S.C. §
4303(4)(A)(i).  Rosa is delegated the responsibility of placing

Department employees on administrative leave and recommending them for termination even if the Town makes the final decision.

### 2.   Count II: Tortious interference with prospective business relationships

Plaintiff also alleges that Rosa, in his individual capacity, intentionally interfered with plaintiff's efforts to obtain employment with other police departments in retaliation for plaintiff's refusal to resign in November, 2009.  To prove his claim, plaintiff would have to show that

> 1) he had an advantageous relationship with a third party (e.g., a present or prospective contract...); 2) the defendant knowingly induced a breaking of the relationship; 3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and 4) the plaintiff was harmed by the defendant's actions.

Blackstone v. Cashman, 860 N.E.2d 7, 12-13 (Mass. 2007) (citing Weber v. Cmty. Teamwork, Inc., 752 N.E.2d 700, 715 (Mass. 2001)).

Plaintiff does not oppose defendants' motion for summary judgment on this Count and the Court agrees that his claim cannot survive summary judgment.  Plaintiff has proffered no evidence that Rosa actually spoke with any prospective employers, much less used improper means in doing so.

## ORDER

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 52) is, with respect to Count II of plaintiff's Amended Complaint, **ALLOWED,** but is, with respect to Counts I and III of plaintiff's Amended Complaint, **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge
Dated February 5, 2014